IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RUTH-ANN SPRINGER,<br><br>                    Plaintiff,<br><br>    vs.<br><br>OFFICER BRIAN HUNT, ET AL.,<br><br>                    Defendants. | Civ. No. 17-00269 JMS-KSC<br><br>ORDER DENYING DEFENDANTS HUNT, WAKITA, TINGLE, TAVARES, AND ISHII'S MOTION TO DISMISS, ECF NO. 37 |

## ORDER DENYING DEFENDANTS HUNT, WAKITA, TINGLE, TAVARES, AND ISHII'S MOTION TO DISMISS, ECF NO. 37

## I. INTRODUCTION

Before the court is Defendants Hawaii County Police ("HCP") Officer Brian Hunt ("Hunt"), HCP Sergeant Wakita ("Wakita"), HCP Sergeant Tingle ("Tingle"), HCP Officer Shaine Tavares[1] ("Tavares"), and HCP Officer Kenneth Ishii's ("Ishii") (collectively, the "HCP Defendants") Motion to Dismiss pro se Plaintiff Ruth-Ann Springer's ("Plaintiff") Complaint.[2]  For the reasons set forth below, the Motion is DENIED.

---

[1] Although the Complaint incorrectly names Officer Shaine Tavares by the name of Officer "Shane Travis," *see* Mot. at 2 n.1, the court uses his proper name.

[2] The Motion does not seek to dismiss claims against the remaining Defendant — realtor Lori Henbest.

## II. BACKGROUND

### A.    Procedural Background

On June 8, 2017, Plaintiff filed a "Complaint for Violation of Civil Rights" ("Complaint") against the HCP Defendants and realtor Lori Henbest ("Henbest") (collectively, the "Eviction Defendants"), and State of Hawaii Judge Harry P. Freitas ("Judge Freitas"), ECF No. 1, and an Application to proceed in forma pauperis ("IFP Application"), ECF No. 4.  On June 23, 2017, Plaintiff filed a Motion for Temporary Injunction.  ECF No. 9.  On July 11, 2017, this court granted the IFP Application, dismissed the Complaint in part for failure to state a claim, and denied the Motion for Temporary Injunction (the "July 11 Order").  ECF No. 11.  The July 11 Order dismissed claims against Judge Freitas without leave to amend, dismissed Plaintiff's conspiracy claim with leave to amend, and determined that the remaining claims against the Eviction Defendants could proceed.  *Id.* at 15-16.

On August 1, 2017, Plaintiff filed a document titled "Complaint: Write of Error is of the District of the Hawaii Federal: Title 42," which the court construed as a First Amended Complaint ("FAC").  ECF No. 14.  On August 4, 2017, the court dismissed the FAC without leave to amend for failure to state a claim and directed service of the original Complaint against the Eviction Defendants.  ECF No. 16.

On November 8, 2017, the HCP Defendants filed the instant Motion to Dismiss.  ECF No. 37.  The court set Plaintiff's response deadline for December 29, 2017.  ECF No. 38.  On January 3, 2018, the court ordered Plaintiff to state whether she intended to oppose the Motion to Dismiss and if so, why she failed to meet the December 29, 2017 deadline to file her Opposition.  ECF No. 50.  On January 5, 2018, Plaintiff filed a "Notice of the Counter Claim of the Stay of the Defendants Motion," ECF No. 49, which the court construed as both a response to the court's January 3 Order and an Opposition to the Motion to Dismiss, ECF No. 50.  On January 16, 2018, the HCP Defendants filed a Reply.  ECF No. 51.  On January 22, 2018, Plaintiff filed a "Statement and Proof for Not Dismissing the Defendant's (sic) Hunt, et al. Claims: Case# 17-00269 JMS-KSC."  ECF No. 52.  A hearing was held on January 22, 2018.[3]

## B.      Factual Background

This action arises from a State of Hawaii foreclosure and eviction, and subsequent criminal proceedings.  As alleged in the Complaint, on January 15, 2016, the Eviction Defendants removed Plaintiff from her home on the Big Island of Hawaii pursuant to an expired writ of possession.  Compl. at 6 ("3 Officers, 2 Sargent's, [(sic)] and a Real-estate agent, using an old writ of possession that the

---

[3] After the hearing, Plaintiff filed additional documents, which the court considers in connection with this Order.  *See* ECF Nos. 54, 60, 61, 63, 64.

statute of limitation had run out . . . took possession of my property."). Hunt allegedly "took down the KAPU sign that was . . . protecting [Plaintiff] on her land." *Id.* at 9. The Complaint further alleges that Plaintiff "was home," and when Hunt went to move her from her seated position, she "raised both arms and hands in the air and told [O]fficer Hunt, 'I know you are arresting me. I am cooperating with you. I am not resisting so what do you want me to do.'" *Id.* at 11; *see also id.* at 9. Hunt arrested Plaintiff. *Id.* at 9, 10; *see also id.* at 11 ("Officer Hunt made a personal decision to make it a criminal matter."). Plaintiff was then detained, subject to bail. *See id.* at 7 ("I was detained without my consent for violating a statute, I have just been kidnapped."); *see also id.* at 11 ("[T]he prosecutors and Sargent Wakita set the ransom for my liberty . . . [and state court] Judge Freitas confirmed the charges and the ransom[.]").

> The Complaint alleges that during the course of Plaintiff's arrest:
>
> Officer Hunt assaulted me . . . tearing my rotator cuff when he grabbed my right arm and jerked me up from where I was sitting. After hand-cuffing me, he picked me up by my hands that were cuffed behind my back, forcing me to bend my body in half to ease the pain in my shoulder joints. I begged him to stop hurting me and that I was not resisting arrest. . . . My arm has limits of motion that cannot be fixed. . . . Also, when Officer Hunt was finger-printing me, he grabbed at my fingers and squeezed hard. I complained because my fingers are very sore and hurt when touched because of my osteoarthritis disfiguration.

*Id.* at 9-10.

Further, at some point during the eviction, Henbest "assaulted me by shoving [me] into the hall wall hard enough to knock the wind from me." *Id.* at 10. The Complaint alleges that Henbest had the locks replaced on the home and removed Plaintiff's possessions. *Id.* "[B]anks and the real estate agent allegedly sold [Plaintiff's] home." *Id.* at 9. Subsequently, "people were moved into my home and after the case was dismissed, my property was never returned." *Id.* at 11.

The remainder of the Complaint is filled with nonsensical opinions, assumptions, conclusory allegations, and pronouncements.[4] As a result of the foregoing, Plaintiff allegedly suffered severe mental anguish and depression, physical injuries, had a nervous breakdown, lost everything, and became homeless. *Id.* at 11, 12.

---

[4] For example, the Complaint alleges: (1) "[t]he common law is the real law . . . ; the codes, rules, regulations, policy and statu[t]es are not the law," *id.* at 8; (2) "bank[s] never actually 'loan[]' anything of equitable value and contribute[] nothing but a minor accounting service when they set up a mortgage," and therefore "have no valid security interest," *id.*; (3) "we can't really own anything unless paid in gold" or "silver," and therefore "we are mere tenant's with rights of use, in regards to our property we presume," *id.* at 9; (4) "I have reserved all my rights with UCC 1-308 and all my rights [are] protected by the Universal Declaration of Human Rights of December 1948," *id.* at 12; and (5) "your corporation agencies have agreed to pay me per your violations of my unalienable rights, protected by 1978 Hawai'i Constitution and the Constitution for the United States of America," *id.*

The Complaint asserts 42 U.S.C. § 1983 claims against the Eviction Defendants in their individual capacities only,[5] for violation of, and conspiracy to violate, Plaintiff's statutory and/or constitutional rights, particularly those protected by the Fourth Amendment. *Id.* at 4-7, 11.[6] The Complaint further asserts state-law claims for assault and battery, and intentional and negligent infliction of emotional distress. The Complaint seeks (1) compensatory damages for permanent injuries to Plaintiff's shoulder; (2) $2,785,750.00 in compensatory damages for the lost property and the toll on Plaintiff's physical and mental health; (3) $6,913,002.00 in "actual material losses"; (4) $25,000,000.00 per violation (12 violations) of Plaintiff's rights protected by the United States and Hawaii

---

[5] Plaintiff checked boxes on the form indicating that her claims are asserted against each Eviction Defendant in an individual capacity and left the official capacity boxes unchecked. Compl. at 2-3.

[6] More specifically, the Complaint asserts claims for violation of the following statutory or constitutional rights: (1) "the enumeration in the constitution of certain rights, shall not be construed to deny or disparage others retained by the people," (2) "offense against public administration: tampering with physical evidence," (3) "conspiracy against rights," (4) "deprivation of rights," (5) "conspiracy to interfere: . . . for the purpose of depriving . . . any person's rights," (6) "neglect to prevent: . . . the wrongs conspired to be done," (7) "failure to correct the wrongs: . . . [The underlying] case was a civil matter. The officer made a personal political determination . . . [to] make this a criminal matter," (8) "state court must prove on the record: All jurisdictional facts . . . I had questioned [the state court's] jurisdiction . . . over the 15-month period protecting my rights at all times with UCC 1-308," (9) "right to a speedy trial: Statutes which would deprive a citizen of rights . . . or property without a regular trial . . . would not be the law of the land," (10) "no immunity," and (11) "duty of courts: . . . to be watchful for . . . stealthy encroachments" on "Constitutional rights." Compl. at 4-6 (emphasis omitted).

constitutions;[7] and (6) the incarceration of all Defendants for five years, and forfeiture of all they own. *Id.*

As evidenced by documents publicly filed with the State of Hawaii District Court of the Third Circuit, Puna Division, and attached to the Motion,[8] a non-judicial foreclosure was conducted against real property at 15-1784 13th Avenue, Keaau, Hawaii 96749 (the "subject property"), resulting in (1) a February 28, 2012 Judgment for Possession[9] in favor of the Federal National Mortgage

---

[7] Section 1983 does not apply to state constitutional claims. *See, e.g.*, *Patterson v. Necoechea*, 2015 WL 9997206, at *3 (D. Ariz. Dec. 10, 2015) ("Section 1983 only applies to rights secured by the United States Constitution; thus, Plaintiff cannot seek relief for violation of an Arizona Constitution provision."); *Exit 282A Dev. Co. v. Worrix*, 2013 WL 786443, at *6 (D. Or. Mar. 1, 2013) ("Plaintiffs' Oregon constitutional claim . . . does not arise under § 1983.").

[8] When considering a Rule 12(b)(6) motion to dismiss, the court may "take judicial notice of 'matters of public record,' but not of facts that may be 'subject to reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)); *see also United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (recognizing that when considering matters of judicial notice a court need not convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment) (citations omitted). The court takes judicial notice that the state-court documents attached to the Motion to Dismiss were filed in state court. *See Harris v. Cty. of Orange*, 682 F3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.") (citation omitted); *see also Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (stating that the court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[9] The Judgment for Possession is dated and file-stamped February 28, 2012 and states:

> This cause having come before the Court on [January 27, 2012] and proof having been shown to the satisfaction of the Court that Defendant [Tyler Springer, Bowen Blackswan, and Ruth Ann Springer] continues to occupy the subject premises, Plaintiff [Federal National Mortgage Association] is entitled to the possession of the subject premises;

(continued . . . )

Association and against Plaintiff (and two others), and (2) a Writ of Possession,

effective February 27, 2012.[10] *See* Exs. A, B, ECF Nos. 37-3, 37-4.  The Writ

///

///

///

_____

(. . . continued)

>**IT IS ORDERED, ADJUDGED, AND DECREED** that
>Judgment for Possession for Plaintiff is entered as follows:
>1.  Plaintiff(s) is entitled to possession of the premises listed above.
>2.  **A WRIT OF POSSESSION** against Defendant shall be issued
>upon presentation by Plaintiff to the Court in accordance with
>Hawaii Revised Statutes § 666-11, and said Writ shall be effective
>as of the Effective Date for Writ of Possession specified above.

ECF No. 37-3.

[10] The Writ of Possession is dated and file-stamped February 28, 2012 and provides:

>**TO:**  The Director of Public Safety of the State of Hawaii, his/her
>deputy or any police officer or other person authorized by the laws
>of the State of Hawaii.
>
>Plaintiff(s) [Federal National Mortgage Association] appeared on
>January 27, 2012 and obtained a Judgment For Summary
>Possession against Defendant(s) [Tyler Springer, Bowen
>Blackswan, and Ruth Ann Springer], under the provisions of
>Hawaii Revised Statutes § 666-11, for the possession of the
>premises located at [15-1784 13th Avenue, Keaau, HI  96749].
>
>**NOW, YOU ARE COMMANDED TO REMOVE** Defendant(s)
>and all persons holding under or through him/her/them from the
>premises, including his/her/their personal belongings and
>properties, and to put Plaintiff(s) in full possession of the premises;
>and file the Writ with the completed execution information within
>180 days from the date of this Writ, unless extended by order of
>this Court.

ECF No. 37-4.

commanded the removal of Plaintiff (and her two co-defendants), and their personal belongings, from the subject property. ECF No. 37-4.[11]

Although not provided by the parties, the court also takes judicial notice of the state-court docket in the underlying foreclosure action which shows that also filed on February 28, 2012 was an "Order Granting Plaintiff's Motion for Summary Judgment and Writ of Possession" (the "February 28, 2012 Order"). *See* Hawaii State Judiciary's Public Access to Court Information ("Ho'ohiki"), http://hoohiki.courts.hawaii. gov/#/case?caseId=3RC111000287 (last visited Feb. 7, 2018). On March 9, 2012, Plaintiff filed a Motion for Reconsideration of the February 28, 2012 Order, which was *granted* on July 13, 2012. *Id.* The July 13 Order states that "[t]he February 28, 2012 Order Granting Plaintiff's Motion for Summary Judgment and Writ of Possession is hereby stricken." Defs.' Notice, Ex. 1 at 2, ECF No. 55-1. Somewhat confusingly, on December 19, 2012, a

---

[11] Plaintiff attached a 50-page document, ECF No. 49-2 & 49-3, to her Opposition that she describes as a "Quo Warranto Case Docket Number #RE-988-933-348-US . . . dated November 10, 2015 from Federal Postal Deputy Marshal Tipstaff, Larry McCormick that was from the Federal Postal Judge: Keline-Kaneyo: Kehau giving me permission to remain on my property and in my house." Opp'n at 2. The top left of the first page of the document includes pictures of flags belonging to "Aupuni-O-Ko-Hawaii-Pae-Aina-Hae," "Ko-Hawaii-Pae-Aina-Hae," and "C.S.S.C.P.S.G." Ex. B, ECF No. 49-2. The court does not consider or take judicial notice of this document — it is not a matter of any state or federal court and is largely incomprehensible. *See Gilbert v. Fed. Nat'l Mortg. Assoc.*, 2017 WL 6519017, at *4 (D. Haw. Dec. 20, 2017) (rejecting assertion that Kingdom of Hawaii is a sovereign nation and citing cases); *see also State v. Smith*, 2014 WL 4494980, at *2 (Haw. Ct. App. Sept. 12, 2014) (unpublished) (rejecting defendant's claim that he was under the jurisdiction of Ko Hawaii Pae Aina, not the State of Hawaii, based on cases finding that the Kingdom of Hawaii is not a recognized sovereign nation).

"Satisfaction of Judgment for Possession Filed February 28, 2012" was filed that references the February 28, 2012 Order and a March 25, 2012 lockout on the subject property, but not the July 13, 2012 Order. *See* Ho'ohiki, http://hoohiki. courts.hawaii. gov/#/case?caseId=3RC111000287; *see also* Defs.' Notice, Ex. 2 at 2, ECF No. 55-2. In short, although the court takes judicial notice of these state-court filings, they are confusing and provide this court with no clear understanding as to the validity of either the Judgment for Possession or Writ of Possession.

And finally, the court takes judicial notice that on February 3, 2016, the County of Hawaii filed a criminal complaint in the State of Hawaii District Court of the Third Circuit, Puna Division against Plaintiff for "Criminal Trespass in the First Degree, in violation of [Hawaii Revised Statutes ("HRS")] Section 708-813(1)(a)(1)," and alleging that "[o]n or about the 15th day of January, 2016 . . . RUTH ANN SPRINGER knowingly entered and/or remained unlawfully in a dwelling[.]" ECF No. 37-5.

### III. <u>STANDARDS OF REVIEW</u>

**A.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital*

*Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Although a plaintiff need not identify the legal theories that are the basis of a pleading, *see Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 346 (2014) (per curiam), a plaintiff must nonetheless allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). And the court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *4 (N.D. Cal. Dec. 5, 2017) (citing *Shwarz*).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

**B.     Pro Se Pleadings**

Because Plaintiff is proceeding pro se, the court liberally construes her Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013). A court may, however, deny leave to amend where further amendment would be futile. *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

# IV. **DISCUSSION**

The HCP Defendants contend that dismissal with prejudice of all claims against Wakita, Tingle, Tavares, and Ishii is warranted because the Complaint fails to include any factual allegations as to those individuals. Defs.' Mem. at 3, ECF No. 37-1. They further contend that the Complaint fails to state § 1983 claims for Fourth Amendment unreasonable seizure, and state-law claims for emotional distress. *Id.* at 4, 10-11. And they argue that because Plaintiff failed to exhaust administrative remedies, this court lacks jurisdiction over the assault and battery claim against Hunt. *Id.* at 9-10. The court addresses these points below.

## A. Section 1983 Claims

### 1. *Legal Standard*

To state a claim under 42 U.S.C. § 1983 against defendants in their individual capacities, "a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). A "person" includes "state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." *Vance v. Cty. of*

*Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996); *see Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) ("[A] § 1983 action can lie against a private party when "he is a willful participant in joint action with the State or its agents.") (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). The second prong may be met with a showing of "state action." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982) ("[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law [under § 1983].").  This requirement "excludes from [§ 1983's] reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).

Further, Plaintiff must allege personal participation in the alleged constitutional violation by an individual defendant to subject that person to individual liability. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.").  That is, Plaintiff must link each named Defendant with some affirmative act or omission that demonstrates a violation of her federal rights.

### 2.     *Application of Legal Standard to Plaintiff's § 1983 Claims*

#### a.     *Fourth amendment unreasonable seizure claims*

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Unless an exception applies, "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).

#### i.     Seizure of the subject property

Under the Fourth Amendment, "[a] seizure is a 'meaningful interference with an individual's possessory interests in [that] property.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992)); *see Lavan v. City of L.A.*, 693 F.3d 1022, 1027 (9th Cir. 2012) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). A Fourth Amendment claim alleging the unreasonable seizure of property necessarily fails if the plaintiff lacks a possessory interest in that property. *See Brown v. United States*, 411 U.S. 223, 229 (1973) (holding that individuals lack standing to contest a seizure of property if they lack a proprietary or possessory interest in that property); *see also Urenia v. Pub. Storage*, 2015 WL 4885998, at *5 (C.D. Cal. Aug. 14, 2015) (citing *Soldal*, 506 U.S. at 61).

The HCP Defendants argue that Plaintiff lacks a possessory interest in the subject property, but the documents provided — the Judgment for Possession and Writ of Possession — are not sufficiently clear to support that argument. These documents, viewed together with the state-court docket and the July 13, 2012 Order, fail to provide a clear picture of the underlying legal proceedings. Nor do they clearly establish (1) the validity of the Judgment for Possession and Writ of Possession, or (2) their effect on Plaintiff's claim to a possessory interest in the subject property on January 15, 2016. In short, they do not refute Plaintiff's claim of a possessory interest in the subject property.

And as this court previously found, viewed liberally, the Complaint alleges that on January 15, 2016, "Henbest and the five police officials jointly acted under color of state law to conduct a warrantless entry onto private land, a seizure of real and personal property without Plaintiff's permission, and an illegal eviction." July 11 Order at 11. This is sufficient at this stage of litigation to state a plausible claim for unreasonable seizure of the subject property in violation of the Fourth Amendment.

ii.     Seizure of personal property

For the reasons set forth above, the HCP Defendants have not established the validity of the Writ of Possession, which purportedly authorized the removal of Plaintiff's personal property. Regardless of the Writ's validity,

however, the HCP Defendants argue that Plaintiff failed to state a claim against them for the unreasonable seizure of Plaintiff's personal property within the home because the Complaint does not allege the personal participation of any HCP Defendant in the seizure of such property.  *See Jones*, 297 F.3d at 934 (requiring allegation of personal participation in alleged constitutional violation); *Johnson*, 588 F.2d at 743 (same).  The court disagrees.

Officers who do not directly engage in another state actor's unconstitutional conduct are still potentially liable if they were "integral participant[s]" in the constitutional violation.  *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004); *Jones*, 297 F.3d at 935.  An integral participant is more than a "mere bystander[]."  *Boyd*, 374 F.3d at 780 (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  Rather, "integral participation" requires some "fundamental involvement" in the conduct that caused the deprivation.  *Torres v. City of L.A.* 548 F.3d 1197, 1206 (9th Cir. 2008) (affirming dismissal absent allegation that officer was present when the plaintiff was arrested, instructed other officers to make the arrest, or was consulted by the other officers before the arrest); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (affirming summary judgment in favor of officer who provided only crowd control and officer who arrived after the allegedly unconstitutional arrest); *Boyd*, 374 F.3d at 780 (holding that each officer who provided armed backup for another officer who unconstitutionally

discharged a flash-bang device to gain entry to a home could be held liable for the use of excessive-force because "every officer participated in some meaningful way" and knew and did not object to the use of the flash-bang device).

Here, the Complaint alleges that the HCP Defendants and Henbest together executed a joint plan to evict Plaintiff from the subject property and for Henbest to remove Plaintiff's personal items. *See* Compl. at 6 ("3 Officers, 2 Sargent's [(sic)] and a Real-estate agent . . . took possession of my property."). Further, the Complaint alleges that the underlying basis for the removal of Plaintiff's personal property — the Writ of Possession — was invalid. Viewed in a light favorable to Plaintiff, these allegations are sufficient to show integral participation by each HCP Defendant.[12] That is, at this pleading stage of litigation, these allegations — that the HCP Defendants acted in concert under a joint plan

---

[12] And even if Henbest was not a state actor, under similar reasoning, the HCP Defendants may be liable under § 1983 by participating in a private citizen's unlawful act. *See Cochran v. Gilliam*, 656 F.3d 300, 308 (6th Cir. 2011) (citing *Soldal*, 506 U.S. at 69); *Flatford v. City of Monroe*, 17 F.3d 162, 169-71 (6th Cir. 1994) (determining that officers who took an active role in seizure were not entitled to qualified immunity where there was neither a valid court order permitting the officer's conduct nor any exigent circumstance in which the government's interest would outweigh the individual's interest in his property); *Howerton v. Gabica*, 708 F.2d 380, 384 (9th Cir. 1983) (holding that officers were not "merely standing by" to keep the peace during an eviction because it appeared that they sanctioned the event by being present at each step of the eviction and advising the tenants to leave); *Monteilh v. Cty. of L.A.*, 820 F. Supp. 2d 1081, 1091 n.13 (C.D. Cal. 2011) (collecting cases); *cf. Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) ("[O]fficers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor."); *Dunn v. City of Elgin*, 347 F.3d 641, 649 (7th Cir. 2003) (holding that officers crossed over from providing "peacekeeping standby service" to participating in removal of child by enforcing invalid court order).

and "took" Plaintiff's property — are sufficient to support the reasonable inference that each HCP Defendant was an integral participant. Accordingly, Plaintiff's claims against the HCP Defendants for unreasonable seizure of personal property in violation of the Fourth Amendment remain.

### iii. Seizure of Plaintiff's person

The Complaint alleges that Hunt arrested and kidnapped Plaintiff. Compl. at 7-9, 11. Viewed liberally, the court construes the Complaint as asserting a Fourth Amendment claim for the unreasonable arrest or seizure of Plaintiff's person.

"A warrantless arrest is lawful under the Fourth Amendment 'only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense.'" *Michino v. Lewis*, 2015 WL 3752503, at *5 (D. Haw. June 16, 2015) (quoting *Torres*, 548 F.3d at 1207 n.7). "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009); *see Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004).

Here, the Complaint alleges that the Eviction Defendants came onto the subject property and removed Plaintiff from the home, *see* Compl. at 11 ("I was in my home"), based on "an old writ of possession that the statute of limitation

had run out (2012)," *id.* at 6. Thus, it is clear that the Eviction Defendants were implementing the February 28, 2012 Writ of Possession. But as set forth above, it is not at all clear that on January 15, 2016 Plaintiff lacked a possessory interest in the subject property and/or that the Writ of Possession was valid. And even if the Eviction Defendants believed Plaintiff lacked a possessory interest in the subject property, there are no allegations suggesting Plaintiff refused a request to leave. *See Hunter v. City of Fed. Way*, 2017 WL 6406019, at *2 (W.D. Wash. Dec. 15, 2017) (finding probable cause for arrest where officer told Plaintiff that the property owner wanted Plaintiff to leave and that Plaintiff would be arrested if he did not leave, but Plaintiff remained on the property); *Andrade v. Cho*, 2017 WL 3723632, at *3 (D. Haw. Aug. 29, 2017) (finding that officer had probable cause to arrest Plaintiff where there was no dispute that the officer believed Plaintiff's presence on the property constituted criminal trespass, and the officer had warned Plaintiff of that fact the day before, but Plaintiff remained on the property). Rather, as alleged in the Complaint, Plaintiff was sitting in the home on the subject property, told Hunt that she was not resisting arrest, and asked him what he wanted her to do. *See* Compl. at 9, 11. The court cannot determine from these facts whether Hunt physically removed and arrested Plaintiff before she had an opportunity to leave.

The HCP Defendants urge the court to find that the County prosecutor's February 3, 2016 filing of a criminal complaint charging criminal trespass in violation of HRS § 708-813(1)(a)(1), *see* ECF No. 37-5, confirms the existence of probable cause for her arrest on January 15, 2016. Mot. at 7-8. The Ninth Circuit has recognized that the "[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered *thereafter* because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (emphasis added). Here, Plaintiff was charged with criminal trespass *after* her arrest, not before. Although a subsequent criminal complaint might be relevant, the court can find no legal authority supporting the HCP Defendants' argument that the mere filing of criminal charges after an arrest necessarily or automatically establishes the existence retroactively of probable cause at the time of the arrest.

In short, whether Hunt had probable cause to arrest and detain Plaintiff is an issue of fact that cannot be resolved on a motion to dismiss. Accordingly, Plaintiff's § 1983 claim against Hunt for unreasonable arrest or seizure of her person in violation of the Fourth Amendment remains.

///

///

*b.* *Fourth amendment excessive-force claim*

Although the Motion seeks dismissal of the Complaint, it does not specifically address Plaintiff's excessive-force claim. The Fourth Amendment (through the Fourteenth Amendment) prohibits the use of "excessive force" in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

As set forth in the July 11 Order, the Complaint alleges sufficient facts to state a plausible § 1983 excessive-force claim against Hunt. July 11 Order at 11. Because the existence of the state-court documents provided by the HCP Defendants does nothing to alter the court's analysis, for the reasons set forth in the July 11 Order, this claim remains and may proceed.

**B.** **State-Law Claims**

**1.** ***Assault and Battery Claims***

This court previously found that the Complaint adequately alleges state-law assault and battery claims against Hunt and Henbest. July 11 Order at 14. Hunt now argues that this court lacks jurisdiction over the assault and battery claim against him because Plaintiff failed to exhaust her administrative remedies as required by Hawaii County Charter § 13-18. Hunt's argument is without merit.

Section 13-18 provides:

No action shall be maintained for the recovery of damages for any injury to persons . . . by reason of negligence or other act of any official or employee of the county unless a written statement stating fully when,

> where and how the injuries occurred, the apparent extent
> thereof and the tentative amount claimed therefor shall
> have been filed with the county clerk within two years
> after the date the injury was sustained.

But this provision cannot be read in isolation — instead, it must be read in conjunction with HRS § 46-72, which requires written notice to "the individual identified in the respective county's charter" within two years "[b]efore the *county shall be liable for damages*" based on injuries received from a county employee.[13] *See Harris v. Cty. of Haw.*, 2017 WL 5163231, at *2-3 (D. Haw. Nov. 7, 2017) (dismissing state-law claims against *County* of Hawaii for failure to comply with Hawaii County Charter § 13-18) (emphasis added); *Annan-Yartey v. Muranaka*, 2017 WL 1243499, at *4 n.9 (D. Haw. Apr. 3, 2017) (finding that § 46-72 applies to counties, not county employees sued in an individual capacity); *Oakley v. State*, 54 Haw. 210, 216, 505 P.2d 1182, 1186 (1973) (determining that the purpose of

---

[13] The full text of HRS § 46-72, titled "Liability for injuries or damages; notice" states:

> Before the county shall be liable for damages to any person for
> injuries to person or property received upon any of the streets,
> avenues, alleys, sidewalks, or other public places of the county, or
> on account of any negligence of any official or employee of the
> county, the person injured, or the owner or person entitled to the
> possession, occupation, or use of the property injured, or someone
> on the person's behalf, within two years after the injuries accrued
> shall give the individual identified in the respective county's
> charter, or if none is specified, the chairperson of the council of the
> county or the clerk of the county in which the injuries occurred,
> notice in writing of the injuries and the specific damages resulting,
> stating fully when, where, and how the injuries or damage
> occurred, the extent of the injuries or damages, and the amount
> claimed.

Hawaii County Charter § 13-18 is to inform municipal authorities of the details of a claim in order to aid an investigation and "guard *the municipality* against fraudulent and unfounded claims") (emphasis added).

The Complaint asserts an assault and battery claim for damages against Hunt in his individual capacity only; the claim is not asserted against the County of Hawaii. Thus, Hawaii County Charter § 13-18 does not apply. For the reasons set forth in the July 11 Order, the court finds that the Complaint states a state-law assault and battery claim against Hunt and may proceed.

### 2. *Emotional Distress Claims*

This court previously characterized the Complaint as alleging that the Eviction Defendants' eviction action and seizure of Plaintiff's home and possessions caused Plaintiff to suffer severe mental anguish and depression, resulting in a nervous breakdown. *See* July 11 Order at 14. The HCP Defendants seek dismissal contending that Plaintiff's emotional distress claims are based solely on Henbest's removal of Plaintiff's personal property. The court disagrees.

After detailing allegations of arrest, seizure, and use of force against her person by Hunt and Henbest, the Complaint alleges that "[t]he mental anguish I have experienced over the last year and half has been horrible. I had a mental breakdown when *this* happen[ed.]" Compl. at 10 (emphasis added). Viewed liberally, this language is sufficient for the court to find that the emotional distress

claims are based on the HCP Defendants' execution of the Writ, Henbest's removal of Plaintiff's personal property, and the alleged use of force by Hunt and Henbest.

Under Hawaii law, to state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another." *Enoka v. AIG Haw. Ins. Co.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006). And to state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must show "(1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress." *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1122 (D. Haw. 2011). Additionally, a plaintiff "must establish some predicate injury either to property or to another person in order himself or herself to recover for [NIED]." *Kaho'ohanohano v. Dep't of Human Servs.*, 117 Haw. 262, 306-07, 178 P.3d 538, 582-83 (2008) (citation omitted).

Viewed liberally at this pleading stage of the litigation, the court finds that the Complaint's allegations that (1) "3 Officers, 2 Sargent's [(sic)], and a Real-estate agent, using an old writ of possession" conducted an eviction on January 15, 2012, and (2) Plaintiff suffered mental and physical injuries following "this"

incident, are sufficient to state a claim for IIED and/or NIED against the HCP

Defendants. The court further finds that the Complaint's allegations of Henbest's

removal of Plaintiff's personal property, and the alleged use of force by

Hunt and Henbest are sufficient to state claims for infliction of emotional distress.

Thus, Plaintiff's emotional distress claims remain and may proceed.

## V. <u>CONCLUSION</u>

Based on the foregoing, the Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 13, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Springer v. Hunt, et al.*, Civ. No. 17-00269 JMS-KSC, Order Denying Defendants Hunt, Wakita, Tingle, Tavares, and Ishii's Motion to Dismiss, ECF No. 37